PAULA BROPHY & others *vs.* SCHOOL COMMITTEE OF WORCESTER.

Worcester.    October 16, 1978. — December 18, 1978.

Present: KEVILLE, ARMSTRONG, & BROWN, JJ.

*Practice, Civil*, Class action. *School and School Committee.*

In an action by five named teachers against a school committee, the judge did not abuse his discretion in determining that a class of 160 long term substitute teachers and a class of 70 teachers in federally reimbursed programs were too numerous to require joinder and in certifying the two classes under Mass. R. Civ. P. 23, even though the employment circumstances of individual class members differed. [735–736]

Regular and continuous teaching service as either a long term substitute or as a teacher in a federally reimbursed program is to be counted under G. L. c. 71, § 41, for the purpose of establishing tenure. [737-738]

CIVIL ACTION commenced in the Superior Court on June 2, 1975.

The case was heard by *Morse, J.*

*Bennett S. Gordon,* Assistant City Solicitor, for the School Committee of Worcester.

*Jeffrey M. Freedman* for Paula Brophy & others.

KEVILLE, J. This is an appeal by the defendants, members of the Worcester school committee (committee) from

a judgment entered in the Superior Court in favor of the plaintiffs, who are teachers in the Worcester public school system, on a complaint for a declaratory judgment under G. L. c. 231A. The plaintiffs comprise five named teachers and two classes of teachers for whom the named individuals serve as class representatives. The first class is made up of "long term substitutes" and the second of "federal programs" teachers, that is, teachers in federally reimbursed programs.

The committee challenges the certification by a Superior Court judge of these classes under Mass.R.Civ. P. 23, 365 Mass. 767 (1974), and the judgment of the trial judge that the five named plaintiffs have acquired tenure under G. L. c. 71, § 41, having served for three consecutive years within the system, that each school year of "regular and continuous" teaching service as either a long term substitute or as a Federal programs teacher shall be credited as one of the three consecutive school years necessary to acquire tenure under § 41, and that all teachers who have taught for three consecutive school years as long term substitutes, Federal programs teachers, regular teachers or a combination of these are entitled to the protection of the provisions of G. L. c. 71, § 42.

The committee has not taken issue with the trial judge's order for payment of compensation set forth in paragraph 5 of the judgment made pursuant to his rulings on the issue of tenure.[1]

---

[1] Paragraph 5 reads as follows: "5. The Worcester School Committee is hereby ORDERED to pay the plaintiffs and all teachers of federal programs and all long term substitute teachers who have more than three years' teaching service in the Worcester Public Schools compensation equal to the difference between the salary they were actually paid (on Step 3 of the salary schedule) in their fourth and subsequent years of employment and the salary they would have been paid had the school committee moved them up the salary schedule in such years in the customary fashion for tenured teachers."

We note a discrepancy in regard to long term substitutes in the judge's parenthetical reference to "Step 3" of the salary schedule. The evidence and the judge's findings establish that long term substitutes,

The case was tried and comes here upon the pleadings, a single deposition and accompanying exhibits which by stipulation constitute the evidence in the case. The judge filed a "Memorandum and Order." In reviewing the case we stand in the same position as the trial judge and draw our own conclusions, unaffected by his findings. *Hiller* v. *Submarine Signal Co.*, 325 Mass. 546, 549, 551 (1950), and cases cited. Pertinent facts are as follows:

The named plaintiff Paula Brophy has been employed continuously by the committee since December 20, 1971, to teach on a full-time basis in the Operation Reading Base (ORB) program for which the committee receives Federal reimbursement under the Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, 79 Stat. 27 (1965). The plaintiff Patricia Gaudette has been employed since October 10, 1972, continuously and on a full-time basis in the ORB program. The plaintiff Dorothy Shea taught in the ORB program for three consecutive school years and part of another until she took a maternity leave of absence from March, 1975, to September, 1976, when she resumed teaching in the ORB program. The plaintiff Donald Gannon taught continuously in DISTAR, another federally reimbursed program of compensatory reading instruction, from September, 1970, until June, 1974. DISTAR has since been discontinued. During the next two school years he served as a long term substitute teacher. In September, 1976, he was elected as a regular teacher in the school system but to date has not been granted tenure. The fifth plaintiff Alan Nordberg has been granted tenure by the committee, effective September, 1976, subsequent to the initiation of this suit but only on the basis of his years of service as a regular teacher. His prior service as a long term substitute was not counted towards tenure.

unlike Federal programs teachers, are paid not at Step 3 but are limited to Step 1 of the teachers' salary schedule.

With respect to the first certified class, the judge found that long term substitutes have the same duties as regular teachers and are hired and evaluated in the same manner but are paid on a per diem basis at a single rate, "Step 1" of the teachers' salary schedule, regardless of teaching experience or educational degrees and not according to a progressive salary schedule. Like regular teachers, they must be certified by the State Department of Education. But unlike "daily substitutes," who are called each day on which they are asked to teach, long term substitutes are given the same assignment "for a predetermined period of time" which "in many cases" may be for an entire school year. Among approximately 160 long term substitutes currently employed in the school system, about seventy are replacements for teachers on leaves of absence. The remainder fill teaching positions denominated "temporary" by the committee. Long term substitutes are eligible for the teachers' retirement system and the municipality's group insurance program under G. L. cc. 32 and 32B, respectively.

Federal programs teachers, the second certified class, work in programs which supplement the regular curriculum and for which the school committee receives Federal reimbursement under the Elementary and Secondary Education Act of 1965. These teachers work in one of four programs: (1) the Operation Reading Base (ORB) program: (2) the LAMP program (a mathematics program otherwise unidentified in the record); (3) the English as a Second Language (ESL) program; and (4) the School Committee Liaison (SCL) program, which employs individuals whose duties include helping elementary school children with problems which may transcend the school environment.[2] By and large, the federally reimbursed programs are designed to assist economically or socially deprived youngsters.

---

[2] Although there is mention in the record of a fifth Federal program, Headstart, teachers employed in that program are apparently not intended to be included in the class.

Federal programs teachers must be certified like regular teachers, and like regular teachers are paid on an annual basis. They receive increases according to the salary schedule for regular teachers except that they may not advance beyond "Step 3" of the schedule. Almost all are full-time employees who serve during the entire school year. The criteria for employing a teacher in a Federal program are the same as the criteria for regular teachers although the evaluation forms for the two groups differ. Due to a Federal requirement that such programs be supplementary to the regular curriculum, a teacher in a Federal program cannot replace a regular teacher, who teaches the same subject, and still remain as part of the Federal program. These teachers are eligible for the retirement system and group insurance programs.

1. The challenge of the committee to the certification of the two classes of teachers is that the criteria for maintenance of a class action under Mass.R.Civ.P. 23, have not been met. A judge has broad discretion under rule 23 in determining whether an action may be maintained as a class action. E.g., *Wright* v. *Stone Container Corp.*, 524 F.2d 1058 (8th Cir. 1975). See 3B Moore's Federal Practice par. 23.50, at 23-436 to 23-437 (2d ed. 1978).

The committee first argues that the two classes of teachers are not so numerous that joinder of all members is "impracticable" under rule 23(a)(1). However, the word impracticable in the context of rule 23 has been interpreted to mean impractical, unwise or imprudent rather than impossible or incapable of being performed. See, e.g., *Goldstein* v. *North Jersey Trust Co.*, 39 F.R.D. 363, 367 (S.D.N.Y. 1966); *Arkansas Educ. Assn.* v. *Board of Educ. of Portland*, 446 F.2d 763, 765 (8th Cir. 1971). Considerations of efficiency, limitation of judicial resources and expense to the plaintiffs support a determination that joinder will not be required. See *Stevenson* v. *Austin*, 3 Met. 474, 480 (1842); *Fox* v. *Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D. Pa. 1975). Applying these

principles to the case at hand, we do not conclude that the judge abused his discretion in his determination that the class of 160 long term substitutes and that of seventy Federal programs teachers were too numerous to require joinder. The committee's claim that the other criteria of rules 23(a) and (b) have not been met, i.e., that questions of law and fact are not sufficiently common to the classes, that the common questions do not predominate over questions affecting only individual members, that the named plaintiffs do not have claims that are typical of those of the classes, that they do not adequately represent the classes, and that the class action is not superior to other methods of adjudication — all focus upon the committee's contention that the judicial decisions construing c. 71, § 41, do not permit judgments concerning the statute's effect on the status of teachers except on an individual basis.

We disagree. The only question relevant to the determination of tenure which is not common to the respective classes is whether an individual teacher has served on a "regular and continuous" basis. See *Nester* v. *School Comm. of Fall River,* 318 Mass. 538, 542-543 (1945). However, the regularity and continuity of the class members' service are not the apparent bases for the committee's denial of tenure to the members of the classes. Instead, the committee has taken the position that a teacher's status as a long term substitute or a Federal programs teacher precludes consideration of that teacher's service toward the acquisition of tenure. Because the committee has acted consistently with respect to these classes of teachers, a class action is appropriate even though there is a difference in the employment circumstances of individual class members. See *Carr* v. *Conoco Plastics, Inc.,* 295 F. Supp. 1281, 1287 (D. Miss. 1969), aff'd, 423 F.2d 57, cert. denied, 400 U.S. 951 (1970); *Sylvester* v. *United States Postal Serv.,* 393 F. Supp. 1334, 1341 (S.D. Tex. 1975).

2. In assessing whether a teacher's service is to be counted toward the establishment of tenure under G. L. c. 71, § 41, the court looks "to the substance of the relationship" between the teacher and the committee. *Ryan* v. *Superintendent of Schs. of Quincy*, 363 Mass. 731, 740 (1973). Where employment of a "substantial character" is found to exist, the service qualifies toward the establishment of tenure. *Frye* v. *School Comm. of Leicester*, 300 Mass. 537, 539-540 (1938). The service must be "regular and continuous" rather than "intermittent and irregular." *Nester* v. *School Comm. of Fall River*, 318 Mass. at 542-543. *Brodie* v. *School Comm. of Easton*, 3 Mass. App. Ct. 141, 143 (1975). Because the substitute teachers in *Nester* and *Brodie* were found not to have been employed on a regular and continuous basis, the question was left open whether a substitute teacher who has been employed continuously for the three year period required by § 41 has acquired tenure. Inasmuch as a long term substitute is frequently a replacement for a "regular" teacher, performs the same functions (*Woodward* v. *School Comm. of Sharon*, 5 Mass. App. Ct. 84, 86-87 [1977]), is evaluated and hired in the same manner as a regular teacher, and serves for a predetermined period of time, we conclude that such service, so long as it is regular and continuous throughout the school year, is to be counted under § 41 for the purpose of establishing tenure.

Similar reasoning supports our conclusion that a Federal programs teacher is also eligible for tenure under the statute. As previously stated, the conditions of employment of such a teacher resemble those of regular teachers in the essentials. While four categories of employment are included within the federally reimbursed programs, the functions of teachers holding those positions are analogous to those performed by regular teachers who are eligible for tenure in the school system.

We think therefore that the judge was right in his determination that the five named plaintiffs have acquired tenure under § 41 and that as to each member of

each class the committee "must determine, regardless of the denomination as a long term substitute or a federal program[s] teacher, whether the service of the teacher has been otherwise 'regular and continuous.' " See *Nester*, 318 Mass. at 542-543; *Brodie*, 3 Mass. App. Ct. at 143; *Ryan* v. *Superintendent of Schs. of Quincy.* 363 Mass. at 739.

*Judgment affirmed.*