WORCESTER VOCATIONAL TEACHERS ASSOCIATION & others[1]
vs. CITY OF WORCESTER & others.

Worcester. November 6, 1981. — January 5, 1982.

Present: HALE, C.J., GRANT, & GREANEY, JJ.

*School and School Committee*, Physical education, Vocational schools.

A vocational school managed by a local board of trustees under G. L.
c. 74, § 3, is bound by the provision of G. L. c. 71, § 3, requiring
public schools to provide physical education for all students. [3-8]

CIVIL ACTION commenced in the Superior Court Department on April 23, 1981.

The case was heard by *O'Connor*, J.

*Joan Entmacher*, Assistant Attorney General, for the interveners.

*Bennett S. Gordon*, Assistant City Solicitor, for the city of Worcester.

*Sandra C. Quinn* for the plaintiffs.

GREANEY, J. This action was brought by the Worcester Vocational Teachers Association and other interested parties against the city of Worcester, the city manager, the

---

[1] Additional plaintiffs include four officers of the Association and two students at the Worcester Vocational High School who purportedly represent all of the other students affected by the decision under review.

members of the city council, and the city's board of trustees for vocational education (board). The action sought a declaration that the board's decision on April 9, 1981, to eliminate all physical education programs for the approximately 1,600 students attending the city's two vocational secondary schools violated G. L. c. 71, § 3, as appearing in St. 1979, c. 81. That section provides, in pertinent part, that "[p]hysical education shall be taught as a required subject in all grades for all students in the public schools for the purpose of promoting the physical well-being of such students."[2] The plaintiffs also sought an injunction restoring physical education classes to the curriculum of those schools and prohibiting the discharge of all six physical education teachers.

On what were treated as cross-motions for summary judgment (see Mass.R.Civ.P. 12[b], 56[a], 365 Mass. 755-756, 824 [1974]; *Brookline* v. *Medical Area Serv. Corp.*, 8 Mass. App. Ct. 243, 245 n.7 [1979]), a judge of the Superior Court entered a judgment which declared that "the [b]oard's vote to discontinue the physical education program in the Worcester [v]ocational schools is legal and effective." The judge based his decision primarily on two grounds. First, he was of the opinion that G. L. c. 74 was meant to be exclusive in governing the requirements of a vocational school curriculum, and that if physical education was to be required in a vocational school, a specific provision to that effect would have been included therein, or in G. L. c. 71, § 3. Second, he thought that the words "public

---

[2] The balance of the statute provides as follows: "Instruction in physical education may include calisthenics, gymnastics and military drill; but no pupil shall be required to take part in any military exercise if his parent or guardian is of any religious denomination conscientiously opposed to bearing arms, or is himself so opposed, and the school committee is so notified in writing; and no pupil shall be required to take part in physical education exercises if a licensed physician certifies in writing that in his opinion such physical education exercises would be injurious to the pupil."

schools" as used throughout G. L. c. 71 include only schools under the supervision of an elected school committee, and were not meant to include vocational schools like Worcester's which are managed by a local board of trustees under G. L. c. 74, § 3.[3] On this point, the judge viewed the provisions of G. L. c. 71, § 37,[4] as particularly significant, and he read the words emphasized in note 4, *supra*, as investing local boards of trustees with discretion to decide whether physical education should be taught in vocational schools under their supervision.

After the judgment was entered, the Attorney General, the Commissioner of Education, and the State Board of Education were allowed to intervene in the action under Mass. R. Civ. P. 24, 365 Mass. 769-770 (1974), and the initial judgment was vacated. After hearing further arguments from the interveners, the judge reaffirmed his earlier decision. A new judgment was entered which again declared that the board's action was proper in all respects. The plaintiffs and interveners appealed and the case was expedited for appellate review. We reverse.

1. The dispositive question is whether the words "public schools" in the first sentence of G. L. c. 71, § 3, include vocational schools managed by a local board of trustees under G. L. c. 74. We think it clear that they do. In our view, a decision to the contrary would defeat the legislative purpose embodied in G. L. c. 71, § 3. Our reasons follow.

---

[3] The plaintiffs' action also raised questions with respect to the legality of the board's composition, i.e., whether the city manager acting under G. L. c. 43, § 104, could appoint the members of the board or whether they should have been elected as provided in G. L. c. 74, § 3. The judge ruled that "the [c]ity [m]anager has lawful authority to appoint the [b]oard" and that "the current [b]oard has been lawfully appointed and . . . possesses all the powers conferred . . . upon it by statute and ordinance." The plaintiffs have not argued any question with respect to the portions of the judgment which so declared. We deem the issues to have been waived. Mass.R.A.P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[4] Section 37 provides, in pertinent part, that a school committee "shall have general charge of all the public schools, including the evening schools and evening high schools, and of vocational schools and departments *when not otherwise provided for* (emphasis supplied)."

The Supreme Judicial Court stated some time ago in *Jenkins* v. *Andover*, 103 Mass. 94, 97-98 (1869), that "'[p]ublic schools,' as those words are used in the Constitution and laws of Massachusetts . . . includ[e] all schools, from those lower than grammar schools to those commonly known as high schools, established and maintained in the several cities and towns as part of the general system of popular education." The *Jenkins* opinion also advised that "schools supported by taxation must be town schools . . . designed for the general education of all the people" and that "what are understood by town schools must be determined by an honest application of the rules of good sense in ascertaining the meaning of these well known terms, by long established and approved usage, and the well known policy of the [L]egislature." *Id.* at 98-99. The words "town schools" in the foregoing quotation are synonymous with "public schools." See *id.* See also 16 McQuillin, Municipal Corporations § 46.02a, at 612 (3d ed. 1979). For the background of our public school system, see *Cushing* v. *Newburyport*, 10 Met. 508 (1845).

Originally, this broad view was not applied to vocational schools. When vocational (then called "industrial") schools were initially established in Massachusetts in the late Nineteenth Century, they were not considered to be part of the public education system. See St. 1872, c. 86, which provided that "[a] town may establish and maintain one or more industrial schools . . . [but] attendance upon any such school shall not take the place of attendance upon public schools required by law." See also *Commonwealth* v. *Connecticut Valley St. Ry.*, 196 Mass. 309, 311-312 (1907), which held that vocational schools were not "public schools" within the meaning of a statute requiring street railways to transport "pupils of the public schools" to and from school at a reduced fare. This exclusion, however, appears to have been based more on the novelty of the subject matter taught in vocational schools and on prevailing attitudes about the nature of a proper education than on the usefulness of training in work related subjects. As familiarity

with the teaching methods and curricula of vocational schools built confidence, earlier dispositions were replaced by a more practical policy which recognized that vocational training (supplemented by exposure to traditional courses) would provide an adequate education and that full-time attendance at approved vocational schools should satisfy the requirements of the compulsory attendance laws.

Ultimately, by comprehensive legislative enactment, prior statutes providing for the management of vocational schools were repealed, and the schools were placed under the jurisdiction of the State Board of Education. See St. 1911, c. 471, § 2[5] (later codified in G. L. c. 74). In this manner, the vocational schools became "part of the [Commonwealth's] general system of popular education." *Jenkins* v. *Andover*, 103 Mass. at 98. The vocational schools which now exist in considerable number throughout the State[6] continue to be an integral part of that system today. It is therefore no accident of terminology that cases subsequent to the *Connecticut Valley St. Ry.* decision freely refer to vocational schools as "public schools." See e.g., *Fulgoni* v. *Johnston*, 302 Mass. 421, 421 (1939) (characterizing the Medford Vocational School as a "public school"); *Kaczmarski* v. *Mayor of Springfield*, 346 Mass. 432, 434 (1963) (referring to G. L. c. 74 as relating to "public schools"). Nor is it accidental that other statutes include vocational schools

---

[5] This statute also provided for State aid to municipalities which maintained vocational schools and reimbursed municipalities without such schools for tuition paid on behalf of students attending vocational schools in other towns or districts. St. 1911, c. 471, §§ 7-10. Thereafter, legislation was enacted to accept Federal legislation designed to promote vocational education, thereby paving the way to receive Federal benefits and funds for approved vocational schools. See St. 1917, c. 215.

[6] The record indicates that there are forty-six public vocational high schools in the State, of which twenty-seven are regional schools managed by regional school district committees under the provisions of G. L. c. 71, §§ 14-20, and c. 74, § 5A, and seventeen are local vocational high schools supervised by local school committees under G. L. c. 71, § 37, and c. 74, § 3. Only two vocational systems (one of them being the one in Worcester now under consideration) are operated by a board of trustees for vocational schools under G. L. c. 74, § 3.

within the meaning of public schools. See G. L. c. 70, § 1, as appearing in St. 1978, c. 367, § 70C, as amended by St. 1980, c. 261, § 35 (providing for State aid to meet the cost of "school support to the respective cities, towns . . . and independent vocational schools"); § 2, as appearing in St. 1966, c. 14, § 40 (defining "public school" for purposes of State aid as "any school or class under the control of a school committee . . . [or] local trustees of vocational education"), and as appearing in St. 1978, c. 367, § 70C, as amended by St. 1980, c. 261, § 35 (deleting the above definition of "public school" but defining a "pupil" as a "person . . . enrolled in . . . public school . . . and educated at the full or partial expense of a city, town, regional school district or independent vocational school"). See also G. L. c. 32, § 1 (defining a "public school" for purposes of the teacher retirement system as "any day school . . . under the superintendence of a . . . school committee and also any day school conducted under the provisions of . . . [G. L. c. 74]"). Thus, the vocational schools, including the two schools in Worcester, clearly meet all of the usual criteria for schools which are public, as distinguished from private: they are (a) publicly owned; (b) publicly supported by local, State and Federal funds[7] (cf. § 2 of art. 18 of the Amendments to the Constitution of Massachusetts; G. L. c. 70); (c) publicly managed (see note 6, *supra*); (d) under the general supervision of the State Department of Education (G. L. c. 74, § 2); (e) free to the public; (f) within the requirements for public transportation (G. L. c. 71, §§ 7A, 7B; G. L. c. 74, § 8A); and (g) viewed as providing a structured curriculum (603 Code Mass. Regs. §§ 4.09, 4.11 [1978]) which may satisfy the compulsory attendance laws, G. L. c. 76, § 1.

Considering this background, we think it obvious that G. L. c. 71 is a comprehensive statute dealing generally

---

[7] The record indicates that, for the 1980-1981 school year, the Worcester vocational school complex received a total of $3,629,038 in State aid, $1,549,943 in revenue from other school districts, and $310,994 in combined Federal funds.

with the "public schools," that G. L. c. 74 addresses certain special requirements of vocational schools, and that both statutes constitute component parts of the larger statutory scheme of public education in this Commonwealth. Accordingly, G. L. c. 71 and c. 74 are "statutes relat[ing] to the same subject matter [which] should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975), and cases cited. The Legislature's purpose in enacting G. L. c. 71, § 3, is unambiguously stated on the face of the statute itself (see *Hoffman* v. *Howmedica, Inc.*, 373 Mass. 32, 37 [1977]), to require physical education "in *all* grades for *all* students in the public schools" (emphasis supplied). That purpose would be frustrated by a construction of § 3 which would invest a local board of trustees with discretionary authority to eliminate physical education from the curricula of vocational schools. See *Lincoln-Sudbury Regional Sch. Dist.* v. *Brandt-Jordan Corp.*, 356 Mass. 114, 117-118 (1969); *Industrial Fin. Corp.* v. *State Tax Commn.*, 367 Mass. 360, 364 (1975). We conclude, in keeping with the advice given in *Jenkins* v. *Andover*, 103 Mass. at 99 (leaving further support for our conclusion to the margin), that "rules of good sense . . . [and] long established and approved usage" require that the words "public schools" in G. L. c. 71, § 3, be deemed to include the vocational school complex in Worcester.[8]

Our analysis renders discussion of the defendants' other contentions unnecessary. It is sufficient to add that the arguments all must yield to the rule that a statute should be

---

[8] Although we find G. L. c. 71, § 3, to be free of ambiguity, our conclusion is also in accord with the well established administrative interpretation given the statute by the Department of Education, which has promulgated extensive regulations governing the curriculum requirements of vocational schools, including the requirement of physical education. See *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 441 n.22 (1972); *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 491 (1978). See also G. L. c. 15, § 1G; G. L. c. 74, § 2; 603 Code Mass. Regs. §§ 4.01-4.14 (1978).

construed in a fashion which promotes its purpose and renders it an effectual piece of legislation in harmony with common sense and sound reason.[9] See *Morrison* v. *Selectmen of Weymouth*, 279 Mass. 486, 492 (1932); *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Commn.*, 354 Mass. 408, 414 (1968); *Massachusetts Commn. Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976).

2. The remaining issues briefed and argued by the parties may be disposed of summarily.

(a) Questions as to the status of the six physical education teachers affected by the board's vote are not properly before us. There is nothing in the record to indicate precisely what, if anything, has been done to alter the positions of these teachers, or whether the pertinent statutory procedures for their discharge, see G. L. c. 74, § 22E, have been initiated or completed. Moreover, the prospect of further litigation between the plaintiff association and the board regarding these positions may well be rendered moot by this decision.

(b) The question of the standing of some of the plaintiffs to participate in this action need not be addressed, since the interveners clearly have standing to challenge the board's decision. See *Save the Bay, Inc.* v. *Department of Pub. Util.*, 366 Mass. 667, 674-675 (1975).

(c) The defendants have cited no authority to support their contention that the members of the city council are not proper parties, and we decline to dismiss them from this action.

---

[9] We see no reason to labor over the other grounds of the decision below, in particular the reasoning that the language in G. L. c. 71, § 37, which gives a school committee charge of the public schools including vocational schools unless "otherwise provided for" was meant to distinguish schools managed by school committees from those managed by local boards of trustees. We doubt that the Legislature intended to exempt the few vocational schools controlled by local trustees from mandatory curriculum requirements. Also, there is nothing in the language of G. L. c. 71, § 3, or of G. L. c. 74, which even remotely suggests that the applicability of § 3 should depend on the nature of the local body chosen to administer the vocational schools.

(d) We find nothing in St. 1980, c. 580 ("Proposition 2-½"), which would justify the board in deleting a mandatory course of instruction from the school curriculum.

3.   So much of the judgment as declares that "the [b]oard's vote to discontinue the physical education program in the Worcester [v]ocational [s]chools is legal and effective" is reversed.   In place of that paragraph of the judgment, there is to be substituted a paragraph declaring that the board shall provide physical education classes in those schools in keeping with the requirements of G. L. c. 71, § 3, so long as vocational schools are maintained in Worcester.   The Superior Court is to retain jurisdiction of this case (see *Smith* v. *Atlantic Properties, Inc.*, 12 Mass. App. Ct. 201, 210-211 [1981], and cases cited) for the purpose of ensuring that proper physical education programs (see 603 Code Mass. Regs. § 9.00 et seq. [1980]) are restored to the curricula of those schools.

*So ordered.*