STEPHANIE RIPLEY *vs.* SCHOOL COMMITTEE OF NORWOOD.

Norfolk. May 2, 1983. — July 6, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*School and School Committee*, Tenure of personnel.

A teacher who had been discharged because of declining enrollment at the end of her fifth consecutive year of employment and who took a five-week maternity leave after being hired as a substitute teacher in the fall of the following school year was, notwithstanding these interruptions, a teacher who had "served for three previous consecutive school years" under G. L. c. 71, § 41, so that, when the school committee voted to appoint her as a full-time teacher in November of that same year, she had tenured status. [612-616]

CIVIL ACTION commenced in the Superior Court Department on April 30, 1980.

The case was heard by *Morse*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Brian A. Riley* for the plaintiff.

*Regina Williams Tate* for the defendant.

HENNESSEY, C.J. The plaintiff, Stephanie Ripley, commenced this action in Superior Court on April 30, 1980, seeking a declaration of her tenured status under G. L. c. 71, § 41. The defendant, school committee of Norwood (school committee), moved for summary judgment. After a hearing, a judgment of dismissal with prejudice was entered on the ground that the plaintiff did not have tenure as a teacher in the Norwood public school system during the 1979-1980 school year. The plaintiff brought this appeal and we transferred the case on our own motion. We conclude that the plaintiff was a tenured teacher during the 1979-1980 school year. Accordingly, we reverse the judgment.

The relevant facts, as established by the pleadings and affidavits, are uncontroverted. Ripley was first employed by the school committee on September 2, 1974, as a substitute school teacher. On October 2, 1974, she was formally notified that she had been given a contract for the 1974-1975 school year. The plaintiff was appointed as a regular full-time teacher for each succeeding school year up to and including the 1978-1979 school year. The plaintiff continued to serve as a teacher until the end of the 1978-1979 school year. The parties agree that she was, in fact, a tenured teacher during the 1978-1979 school year.

On May 10, 1979, the superintendent of the Norwood public schools notified Ripley pursuant to G. L. c. 71, § 42, that the school committee intended to vote on her proposed dismissal on June 26, 1979. She was advised that her possible dismissal was due to declining enrollment. Section 9 of the collective bargaining agreement then in effect between the school committee and the Norwood Teachers Association provided for a detailed procedure to be used in case of layoffs due to reduction in force. Specifically, it provided that nontenured teachers would be laid off before tenured teachers, that tenured teachers would be laid off by seniority within each discipline, that teachers laid off under that section would be given first consideration for substitute duty and, finally, that such teachers would be given first consideration for openings in the system for the following two-year period. On June 27, 1979, in accordance with these provisions, the school committee voted to dismiss Ripley.

On August 30, 1979, Ripley was asked whether she would substitute for a teacher who would be taking maternity leave. Ripley agreed to accept the position even though she was due to deliver a child in mid-September. On September 18, 1979, Ripley requested a maternity leave from September 21, 1979, through the last week in October, 1979. The school committee never took any action on this request, neither granting nor denying it. Ripley stopped working on September 21, 1979, gave birth to her child, and returned to work on October 29, 1979. When she returned

she was assigned to the same school and class that she had at the beginning of the school year.

The teacher for whom Ripley was substituting submitted her resignation which was accepted by the school committee on October 30, 1979. On November 14, 1979, the school committee voted to appoint Ripley as a full-time teacher, retroactive to November 1, 1979. On March 31, 1980, the school committee notified Ripley that she had not been reelected to the professional staff for the 1980-1981 school year. The plaintiff then filed this action claiming that she was a tenured teacher under G. L. c. 71, § 41.[1] Although the school committee adhered to the view that Ripley was not a tenured teacher during the 1979-1980 school year, it agreed to reconsider its action. The school committee informed Ripley that it would vote on her dismissal on June 25, 1980, and that she would be granted a dismissal hearing in conformance with G. L. c. 71, § 42, if she so requested. The school committee informed Ripley, however, that its action was not a waiver of its claim that she was a nontenured teacher. Ripley did not request such a hearing but she informed the superintendent that her failure to do so was not a waiver of her contention that she was a tenured teacher.

We conclude that when the school committee reemployed the plaintiff as a full-time regular teacher on November 14, 1979, retroactive to November 1, 1979, she was employed as a tenured teacher. We base our determination on the plain language of G. L. c. 71, § 41, as amended through St. 1973, c. 847, § 6, which provides in pertinent part that "[e]very school committee, in electing a teacher who has served in its

---

[1] A dispute also arose between the school committee and the Norwood Teachers Association over Ripley's salary and seniority. These issues were submitted to arbitration while the parties took the view that the issue of Ripley's tenured status could not be submitted to arbitration, relying on *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 112-113 (1977). The arbitrator held (1) that upon being appointed Ripley should have been given seniority credit dating back to her original appointment in 1974 and (2) that she should have been paid at Step 6 of the salary schedule since she had taught for five previous years.

public schools for three previous consecutive school years, shall employ him to serve at its discretion . . . ."[2] The provisions of § 41 are mandatory. See *Nester* v. *School Comm. of Fall River,* 318 Mass. 538, 541 (1945); *Paquette* v. *Fall River,* 278 Mass. 172, 173-174 (1932). When the plaintiff was offered a position as a full-time regular teacher in November, 1979, she satisfied the statutory criteria for a tenured employee because she had served for the three previous consecutive years.[3]

The school committee urges that its dismissal of the plaintiff in June, 1979, terminated the plaintiff's right to be treated as a tenured employee. The school committee contends that a dismissal which completely separates a teacher from the school system necessarily ends tenured status as well. Neither G. L. c. 71, § 41 nor § 42, indicates that a teacher who is dismissed but subsequently rehired is pre-

---

[2] Service at the "discretion" of the school committee has long been construed to mean service with tenure. See, e.g., *Paquette* v. *Fall River,* 278 Mass. 172, 174 (1932).

[3] We do not base our conclusion in any way on § 9 of the collective bargaining agreement which provides that teachers who are laid off due to reduction in force be given first consideration for openings in the school system for the following two-year period. The plaintiff submits that these "recall" rights prevented her complete severance as a teacher and that she therefore reacquired her tenured status when recalled pursuant to this provision. The school committee argues that the recall rights of § 9 do not prevent a termination of a teacher's service nor do they in any way preserve tenured status upon rehire. The school committee asserts further that if § 9 were held to preserve tenured status, that portion of the collective bargaining agreement would violate the mandate of G. L. c. 71, § 38, and, therefore, would be invalid. General Laws c. 71, § 38, as amended through St. 1981, c. 96, provides in relevant part that "[n]o election, contract, or promotion of a teacher shall be made by a school committee unless such person shall have been nominated for such election, contract or promotion by the superintendent of schools." Relying primarily on *Directors of Me. School Admin. Dist. No. 36* v. *Maine School Admin. Dist. No. 36 Teachers Ass'n,* 428 A.2d 419 (Me. 1981), the school committee asserts that the recall provision of the collective bargaining agreement would violate G. L. c. 71, § 38, because the school committee would bypass the superintendent by agreeing to consider any laid-off teachers for teaching vacancies before considering new teachers. Since we base our determination solely on the provisions of G. L. c. 71, § 41, we need not address these contentions.

cluded from acquiring a tenured status. The school committee relies most heavily on *Brough* v. *Governing Bd. of the El Segundo Unified School Dist.*, 118 Cal. App. 3d 702, 718-719 (1981), where the court rejected a claim by certain teachers that another teacher not a party to the case retained tenured status when he was laid off in June, 1978, due to declining enrollment and reduction in services, but re-employed in December, 1978. The court denied tenured status, however, because the teacher whose tenure rights were allegedly violated never claimed that he was a tenured employee and because the contract which he executed demonstrated that he was not tenured. *Id.* at 719. In this case, however, the plaintiff has argued consistently that she should be treated as a tenured employee and the employment contract reveals nothing different about her status. Thus, the reasoning of the court in *Brough* is inapposite.

The school committee also relies on *Nester* v. *School Comm. of Fall River,* 318 Mass. 538 (1945), where we considered the effect of a voluntary resignation by a nontenured teacher on the teacher's service toward tenure. In *Nester, supra* at 542-543, we concluded that a teacher's resignation more than one month before the end of her third consecutive school year of employment interrupted the statutory requirement of service for "three previous consecutive school years" even though she was rehired for the next school year. In this case, however, the plaintiff was employed during the entirety of three previous consecutive school years. Hence, our reasoning in *Nester* does not support the school committee's contention that a teacher, who otherwise falls within the provisions of G. L. c. 71, § 41, should be denied tenured status once a "dismissal" occurs.[4] The school com-

---

[4] *Murphy* v. *Cambridge*, 342 Mass. 339 (1961), does not support the conclusion that the plaintiff did not acquire tenured status upon being rehired. In *Murphy*, we concluded that certain tenured teachers who were appointed to administrative positions could not acquire tenure in their administrative positions until they served the three-year probationary period. *Id.* at 341. See *Kelley* v. *School Comm. of Watertown*, 330 Mass. 150, 152-153 (1953). In this case, however, the plaintiff was not appointed to an administrative position. Indeed, although the record is

mittee also points to cases from other jurisdictions where courts have considered the effect of a voluntary resignation on a teacher's tenured status or acquisition of tenure. See *Carpenter* v. *Board of Educ. of Owsley County,* 582 S.W.2d 645 (Ky. 1979); *Herbert* v. *Nyquist,* 53 A.D.2d 785 (N.Y. 1976); *Presley* v. *Board of Educ. of Cent. School Dist. No. 1 of Camden,* 43 A.D.2d 893 (N.Y. 1974). The reasoning in none of these cases, however, dissuades us from the conclusion that the plaintiff was a tenured teacher during the 1979-1980 school year because she fell within the plain language of G. L. c. 71, § 41, in that she had been employed for the three consecutive school years prior to her reemployment in November, 1979, as a full-time regular teacher.[5]

The school committee's final contention is that the plaintiff's absence from employment for five weeks during September and October of 1979, constituted a sufficient break in service to terminate any tenure claim. That break in service, however, occurred prior to the time that the school committee employed the plaintiff as a full-time regular teacher and prior to the time at which she acquired tenure for the 1979-1980 school year.[6] Hence, her absence did not result in a break in service during her tenured employment.

---

not clear on this point, it appears that her teaching assignment upon reemployment was substantially similar to her assignment during the preceding years.

[5] We emphasize that our determination in this case leaves open for resolution several issues. For example, we do not resolve whether the evaluation of the tenured status of a teacher whose service was terminated, and who then was reemployed, would be affected by the nature of or reasons for the initial termination, i.e., whether the termination was an involuntary dismissal due to declining enrollment or budgetary considerations, see G. L. c. 71, § 42; *Boston Teachers Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 212-213 (1982), an involuntary dismissal for "inefficiency, incapacity, conduct unbecoming a teacher . . . insubordination or other good cause," G. L. c. 71, § 42, as amended through St. 1972, c. 464, § 2, or a voluntary resignation. We also do not address whether a tenured teacher who terminates his or her service in one year and then who is rehired not during the next school year but rather in a subsequent school year retains tenured status.

[6] We note that we do not accord the plaintiff tenured status during her employment as a substitute teacher in September, 1979. When she was

The school committee contends that G. L. c. 71, § 41, contemplates continuous, uninterrupted employment and that the plaintiff could not acquire tenure during the 1979-1980 school year unless she were employed without a break in service from the inception of the school year. We, however, perceive no such limiting language in G. L. c. 71, § 41. The statute is unambiguous in its wording and it does not provide that only those teachers elected to serve at the beginning of a school year acquire tenure. Accordingly, we see no basis for concluding that the statute implies the restrictive interpretation urged by the school committee. Thus we need not address the plaintiff's additional argument that the Legislature's mandate set forth in G. L. c. 149, § 105D, regarding maternity leave, precludes our considering her absence due to childbirth as a break in service.

We conclude that the plaintiff acquired tenured status when she was reemployed as a regular full-time teacher on November 14, 1979, retroactive to November 1, 1979. Thus, the judgment of dismissal is reversed and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

first hired in September, she was clearly hired as a substitute teacher for a definite period of time. We do not think that she acquired tenured status at this time. In so deciding, we emphasize that we do not resolve whether a teacher employed as a substitute can ever acquire tenure. See *Brophy* v. *School Comm. of Worcester*, 6 Mass. App. Ct. 731, 737-738 (1978). Thus, the plaintiff acquired tenured status only upon her reemployment as a full-time regular teacher on November 14, 1979, retroactive to November 1, 1979.