McEvoy, J.
Plaintiff brought this action seeking declaratory relief pursuant to G.L.c. 231A of her rights under G.L.c. 71, §§41-42 and G.L.c. 74, §22E, and damages. The case was tried before this Court on April 27, 1998. Upon consideration of all the evidence presented at trial, this Court makes the following findings of fact and conclusions of law.
FINDINGS OF FACT
Plaintiff, Judith Ballotte, brought this action alleging termination in violation of G.L.c. 71 and G.L.c. 74 from her position as a teacher at the Worcester Vocational Career Education Center (“Career Center”).
Ms. Ballotte is a lifelong, Worcester resident. She attended Becker Junior College, where she received a Bachelor of Arts degree, and Clark University, where she received a Master’s Degree in English. She was certified by the Massachusetts Department of Education in Business Subjects, Secondary English and Social Studies in 1974. She began employment with the Worcester Public School System in 1971 as a substitute teacher. In that capacity, she worked at various Worcester high schools and junior high schools until 1973 when she took a full-time position at the Career Center. She worked continuously at the Career Center until 1995, when the defendants laid her off as part of a reduction in force due to a loss of funding.
When she took the position at the Career Center, Ms. Ballotte did not intend to leave or understand that she was leaving the Worcester Vocational School Department. Throughout her employment, she was under the impression that she was employed by the same entity as she had been before, the Vocational School Department. Her salary at the Career Center was paid by the City of Worcester. Paychecks for Career Center teachers were processed through the Vocational School Department’s central business office. The department listed on Ms. Ballotte’s pay stub was “VC,” signifying the Vocational School Department. “VC” is the same code as that listed on the *64 paychecks of teachers employed by the Vocational High School and the Vocational Technical Institute.
The vocational school teachers and the Career Center teachers belonged to different bargaining units. In 1988, Ms. Ballotte formed the Worcester Vocational Career Education Teacher Association (“WVCETA”). In 1980, before the formation of the bargaining unit, the Massachusetts Labor Relations Commission (“MLRC”) denied the Career Center teachers’ attempt to join the vocational schools’ teachers’ bargaining unit. The MLRC refused to approve the add-on of the Career Center Instructors to the Worcester Vocational Teachers Association because there was only minimal community of interest between the two groups. One of the factors in the MLRC’s decision was that, in that body’s opinion, Career Center employees can never attain tenure.[1]
As part of her employment responsibilities at the Career Center, Ms. Ballotte taught a Business Program course, which taught business forms, communication skills, word processing, grammar, job skills, resume writing, etc. English was 50 percent of the curriculum. She used traditional teaching methods of lecture and demonstration. Also, as part of her responsibilities, Ms. Ballotte, and other Career Center teachers, along with teachers from the other vocational schools, attended meetings conducted by the administration of the vocational schools at the beginning and the end of each school year. During her employment at the Career Center, Ms. Ballotte received written evaluations, all of which were favorable. The parties do not dispute that she performed her duties satisfactorily.
In 1995, Ms. Ballotte was notified by the Superintendent of the Worcester Vocational Schools that she would be laid off. She received a certified letter officially terminating her employment on July 1, 1995. At the time Ms. Ballotte was laid off, there was a teacher at the Vocational High School, who was certified in English and had not yet attained professional teacher status. Ms. Ballotte interviewed for positions at North High School and Forest Grove. Junior High School; however, she was not hired for either position. Ms. Ballotte also interviewed for a position with the Vocational Schools in business/technology. Finally, she secured a part-time position as an adjunct professor at Quinsigimond Junior College. Ultimately, Ms. Ballotte retired from the City school system because her COBRA benefits expired after 18 months and left her without health insurance. She decided to take early retirement so that she would have health insurance. At all times relevant to this action, Ms. Ballotte and other teachers were members of the Worcester Retirement System.[2]
The Vocational School System
The Worcester Vocational School Department is overseen by the Superintendent of the Vocational School System. The Superintendent is appointed by a Board of Trustees, which is appointed by the City Manager under the authority of G.L.c. 74, and Worcester City Ordinances. The Worcester Vocational High School and the Worcester Vocational Technical Institute are both divisions of the Vocational School Department. The Career Center, the Vocational High School and the Vocational Technical Institute each have a Director responsible for the day-to-day operations . The three Directors would periodically meet with each other, the School Department cabinet, the Superintendent and the Board of Trustees to discuss administrative matters. All three Directors were overseen by the same hierarchy, which was, in descending order of authority: the Mayor, the city Manager, the School Department Board of Trustees, and the Vocational School Department Superintendent.
The Vocational High School is open to high school aged students (14-18 years old) and offers an alternative to attending regular academic high school. The Vocational High School is predominantly funded by City tax levy funds, with some state aid and some positions funded by Federal grants. The Vocational Technical Institute is a post-secondary education institution for students more than 18 years old. It offers one and two-year technical programs and is funded by student tuition and state aid. Instructors at both the Vocational High School and the Vocational Technical Institute are teachers of vocational education as defined by G.L.c. 74, §1. Some teachers of both schools are required to obtain certification under Chapter 71, or vocational approval under Chapter 74, depending on the subject they teach. Teachers of both schools are members of the Massachusetts Teacher Retirement System and are members of the same bargaining unit.
The Career Center was a federally funded program operated under the auspices of the Worcester Vocational School Department. Its goal was to educate and retrain adults over the age of seventeen. The Center offered many different disciplines according to the labor market’s needs. Funds disbursed pursuant to the Federal Job Training Partnership Act made up most of the Career Center’s budget. The City Manager was the guardian of all federal funds and allocated specific amounts to the various schools’ budgets, including the Career Center. All funds earmarked for the Career Center would flow into accounts labeled “54,” which was the Vocational School account number. In addition to holding and disbursing funds, the City Manager also assessed prospective students to ensure that they met federal criteria. Students accepted into the program did not pay tuition.
The disbursed funds would be held at the Vocational School Department’s central business office located in the Vocational High School. The Vocational School Department processed all requisitions from the Career Center and paid the Career Center’s bills and expenses from a designated fund. Additionally, the *65 Vocational School Department advertised, listed in the telephone directoiy, and listed on its letterhead the Career Center along with the other vocational schools as three divisions comprising the Department.
Each year, the Career Center applied for federal funding to be applied to particular programs. In 1995, approximately 70% of the Career Center’s funding was discontinued. Ms. Ballotte’s position was one of the programs that was not refunded. As a result of the loss of funding, Ms. Ballotte and five other instructors were terminated. The layoffs were effective June 30, 1995. Several of the other teachers laid off became employed within the Worcester public school system, though none through “bumping” rights.
The Career Center advertised for and hired teachers who were certified, or able to be certified, by either the Department of Education or the Department of Occupational Education. Some programs offered by the Career Center did not require that instructors be either certified or approved. During the 1994-1995 school year, nine of the twelve Career Center teachers held certifications from the Department of Education pursuant to G.L.c. 71, §38G. By contrast, during the same year, twenty-nine of the thirty-five teachers at the Vocational Technical Institute did not hold certifications from the Board of Education, but did hold approvals from the Division of Occupational Education. Ms. Ballotte became certified after accepting the position at the Career Center.
RULINGS OF LAW
This Court has jurisdiction over this action because arbitration is not the plaintiffs sole remedy to determine whether she is entitled to professional teacher status. In School Committee of Westport v. Coelho, 44 Mass.App.Ct. 614 (1998), the Court held that teachers dismissed pursuant to a reduction in force were not required, indeed, were not permitted, to arbitrate their layoffs. Accordingly, Ms. Ballotte was not required to arbitrate her dispute before bringing it to this forum.
The threshold issue in this case is whether the Career Center is a “public school” within the meaning of G.L.c. 71 and G.L.c. 74. If the Career Center is a public school, then, by virtue of her service in excess of three consecutive years, Ms. Ballotte would have “professional teacher status” as set forth in G.L.c. 74, §§41 -42.[3] Public school employees who have attained professional teacher status are afforded “bumping” rights when terminated pursuant to a reduction in force. Id. To have “bumping” rights is to be entitled to “bump” into a teaching position held by a teacher who is certified in the same area, but who has not yet attained professional teacher status. The next issue is whether Ms. Ballotte attained professional teacher status.
Neither Chapter 71, nor Chapter 74 provide a definition of a “public school.” Section 1 of G.L.c. 32 defines “public school” as “any day school conducted in the commonwealth under the superintendence of a duly elected school committee and also any day school conducted under the provisions of sections one to thirty-seven inclusive of chapter seventy-four." G.L.c. 32, §1.[4]
Vocational schools are “public schools.” Worcester Vocational Teachers Association v. City of Worcester, 13 Mass.App.Ct. 1, 5 (1982). The acceptance of federal funding does not alter a school’s status as “public.” Id. Similarly, vocational teachers who are paid with federal funds can attain tenure, or what is now known as professional teacher status. Under G.L.c. 71, §41, prior to the 1993 amendment, teachers in federally funded programs could attain tenure. Brophy v. School Committee of Worcester, 6 Mass.App.Ct. 731, 737 (1978). The federally funded programs in Brophywere designed to assist economically or socially deprived youngsters. Id. at 734. Those teachers were certified like regular teachers, full-time, paid on an annual basis and employed under the same criteria as regular teachers. The significant questions the Court asked in Brophy were whether service was “regular and continuous,” and whether “the conditions of employment resemble those of regular teachers in the essentials." Id. at 737. See also Worcester Vocational Teachers Association, 13 Mass.App.Ct. at 5 n.5 (vocational schools, as “public schools,” accept federal funding); Op. Atty. Gen., June 8, 1961, p. 141 (State Board for Vocational Education has authority to administer federal grants for vocational training to relieve unemployment). Accordingly, the fact that the Career Center is mostly or wholly funded by federal funds does not prevent it from being a public school.
The Career Center was a public school as contemplated by Chapters 71 and 74. There are several indicia that make evident the fact that the Vocational School Department treated the Career Center as a division of that department. As noted above, the Career Center was overseen by the same hierarchy as the other vocational schools. The Vocational School Department managed the Career Center’s budget, purchasing, bill paying, and payroll. The Department supervised the Career Center’s Director in the same manner as the other vocational schools’ Directors. Additionally, the school department held out the Career Center to the public as one of its three divisions, for example, by listing the Career Center on its letterhead.
Ms. Ballotte was a certified teacher who served the Vocational School Department for twenty-two years. Upon her completion of three consecutive years, she automatically attained professional teacher status. She should have been afforded bumping rights, and is now entitled to damages for her termination in violation of the express provisions of G.L.c. 71, §41.
ORDER
For the foregoing reasons, the plaintiff is hereby entitled to damages in the amount of $73,350 for the *66 time plaintiff would have worked in the Worcester School System, less $9,983 in mitigation, and less $8,1180 for unemployment compensation received by the plaintiff. It is hereby ORDERED that judgment enter for the plaintiff in the amount of $55,187 plus interest and costs as provided by law, against the defendant City of Worcester.

Defendants sought to admit the decision of the MLRC in City of Worcester and Worcester Vocational Teachers Association, MTA, MCR-3053 (5/30/80). Although admitted, this Court does not find the decision helpful to its determination of whether the plaintiff is entitled to professional teacher status because the decision addressed questions of bargaining unit status under G.L.c. 150E. Furthermore, this Court is not bound in this matter by the MLRC’s findings, nor by its rulings.

Plaintiff sought to admit a decision of the Division of Administrative Law Appeals (“DALA") on a case involving Ms. Ballotte’s right to buy back creditable retirement time at the standard interest rate. Plaintiff argued that the defendant is bound by a stipulation made in that case that the Career Center was a division of the Vocational School Department and, hence, a public school. The Court rejects the argument that the stipulation is applicable to this case, notwithstanding the fact that the plaintiff and the attorney for the defendant in this action were the same as in that action.

The provisions for “professional teacher status,” formerly known as tenure are set forth in G.L.c. 71, §§41 and 42. Section 41 provides in relevant part that “a teacher who has served in the public schools of a school district for three consecutive years shall be considered a teacher, and shall be entitled to professional teacher status as provided in section forty-two." Section 42 provides in relevant part that—
a teacher with professional teacher status, pursuant to section forty-one, shall not be dismissed except for inefficiency, incompetency, incapacity, conduct unbecoming a teacher, insubordination or failure on the part of the teacher to satisfy performance standards developed pursuant to section thirty-eight of this chapter or other just cause . . . Neither this section nor section forty-one shall effect the right of a superintendent to lay off teachers pursuant to reductions in force or reorganization resulting from declining enrollment or other budgetary reasons. No teacher with professional teacher status shall be laid off pursuant to a reduction in force or reorganization if there is a teacher without such status for whose position the covered employee is currently certified.
Section 22E of Chapter 74, makes G.L.c. 71, §§41 and 42 applicable to vocational school teachers and others.

The provisions of Chapter 32 are applicable to the state employee’s retirement system, the teacher’s retirement system and all county, city and town contributory retirement systems.