NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1207                                      Appeals Court

COMMONWEALTH  vs.  WILLIAM A. LOPEZ.


No. 15-P-1207.

Bristol.      February 28, 2017. - May 10, 2017.

Present:  Wolohojian, Milkey, & Shin, JJ.


Moped.  Motor Vehicle, Moped, License to operate.


Complaint received and sworn to in the Fall River Division
of the District Court Department on October 22, 2013.

The case was heard by Cynthia M. Brackett, J.

Kelly M. Costa for the defendant.
Brenna C. Ferrick, Assistant District Attorney, for the
Commonwealth.


MILKEY, J.  For operating a moped while his driver's

license was suspended, the defendant was charged with violating

G. L. c. 90, § 23, as a subsequent offense.  After a bench trial

in District Court, he was found guilty of the underlying

offense, and he then pleaded guilty to the subsequent offense

portion.  The judge sentenced him to ninety days in a house of

correction.  On appeal, the defendant argues that although his

operating the moped with a suspended license may have been a violation of G. L. c. 90, § 1B (which allows for fines but no incarceration), as a matter of law, it cannot be a violation of G. L. c. 90, § 23.  Because we agree, we reverse his conviction.

Background.  It is undisputed that the defendant was driving his moped while his driver's license was suspended.  The factual dispute at trial was whether the moped met the statutory definition of a "motorized bicycle" (as the defendant maintained) or whether instead it was a "motorcycle" (as the Commonwealth maintained).  See G. L. c. 90, § 1, as amended by St. 1992, c. 286, § 153 (definitions).  This distinction potentially mattered because the defendant was charged with violating G. L. c. 90, § 23, as amended by St. 2009, c. 27, § 67, which, by its express terms, applies to "motor vehicles." Motor vehicles, in turn, are defined to include motorcycles but to exclude motorized bicycles.  G. L. c. 90, § 1.

Whether a motorized two-wheeled vehicle qualifies as a motorized bicycle generally depends on the size of its engine, the nature of its transmission, and the maximum speed the vehicle is capable of achieving.  G. L. c. 90, § 1 (definition of motorized bicycle).[1]  Based on the evidence adduced at trial,

---

[1] A "pedal bicycle which has a helper motor" automatically qualifies as a motorized bicycle.  G. L. c. 90, § 1.  A "non-pedal bicycle" with a motor qualifies if the motor has "a cylinder capacity not exceeding fifty cubic centimeters, [the

the judge accepted the defendant's position that his moped qualified as a motorized bicycle, and the Commonwealth has abandoned any argument to the contrary.

With the taxonomic issue resolved and other material facts uncontested, the remaining dispute before the trial judge was one of law:  whether one operating a motorized bicycle while his license was suspended can violate G. L. c. 90, § 23, even though that statute expressly applies only to motor vehicles.  The transcript of the trial reveals that the judge thoughtfully wrestled with that question.  Based on her reading of our decision in Commonwealth v. Griswold, 17 Mass. App. Ct. 461, 462 (1984), the judge concluded that the operator of a motorized bicycle can violate § 23.  With the defendant's license suspension and his operation of the moped established, the judge found him guilty.

Discussion.  Although § 23 does not by its terms apply to motorized bicycles, it must be read in conjunction with G. L. c. 90, § 1B, the statute governing "[t]he operation of 'motorized bicycles' on the public ways in the Commonwealth." Griswold, supra at 461.  That "statute establishes minimum age and licensing standards to insure that operators 'are familiar with rules of the road and the safe operation of the vehicle.'"

bicycle has] an automatic transmission, and [the bicycle] is capable of a maximum speed of no more than thirty miles per hour."  Ibid.

Id. at 462, quoting from Weiss, The Regulation of Mopeds:  A Legislative Proposal, 13 New Eng. L. Rev. 303, 320-322 (1977). It also prohibits the operation of a motorized bicycle "on any way by any person not possessing a valid driver's license or learner's permit."  G. L. c. 90, § 1B, as amended by St. 1989, c. 341, § 61.  Anyone who violates that licensing provision, or who otherwise violates § 1B, is subject to specified fines that escalate for subsequent offenses.[2]

Section 1B sets forth a limited number of operational requirements particular to motorized bicycles.[3]  Beyond that, § 1B does not specify the operational requirements to which operators of motorized bicycles will be subject but, instead, generally states that people operating a motorized bicycle on a public way "shall be subject to the traffic laws and regulations

---

[2] Specifically, G. L. c. 90, § 1B, states:

"A person convicted of a violation of this section shall be punished by a fine of not more than twenty-five dollars for the first offense, not less than twenty-five nor more than fifty dollars for a second offense, and not less than fifty nor more than one hundred dollars for subsequent offenses committed."

[3] A motorized bicycle cannot be operated "at a speed in excess of twenty-five miles per hour," or on "limited access or express state highways where signs specifically prohibiting bicycles have been posted."  G. L. c. 90, § 1B.  In addition, anyone riding on a motorized bicycle is required to use "protective headgear" in accordance with mandated safety standards.  Ibid.

of the [C]ommonwealth."[4]  G. L. c. 90, § 1B.  It is the significance of this cross-reference that is at issue in this case.

In Griswold, we faced the question whether the operator of a motorized bicycle could be prosecuted for operating under the influence of alcohol in violation of G. L. c. 90, § 24(1)(a). We concluded that even though "motor vehicle" is defined to exclude motorized bicycles, the language in § 1B stating that operators of motorized bicycles are "subject to the traffic laws and regulations of the [C]ommonwealth" renders them subject to laws governing the operation of motor vehicles on public ways, including the sanctions applicable to those who violate such laws.  Griswold, 17 Mass. App. Ct. at 462.  A contrary interpretation would have meant that the defendant there could have avoided sanctions for operating under the influence of alcohol.  We reasoned that such a "result would violate the rule of statutory construction that 'a statute should be construed in a fashion which promotes its purpose and renders it an effectual piece of legislation in harmony with common sense and sound reason.'"  Ibid., quoting from Worcester Vocational Teachers Assn. v. Worcester, 13 Mass. App. Ct. 1, 7-8 (1982).

---

[4] The statute includes some specific exceptions to this general requirement.  For example, an operator of a motorized bicycle may signal "his intention to stop or turn" by using either hand.  G. L. c. 90, § 1B.  None of the stated exceptions apply in the case before us.

The question we face in the case before us is whether the § 23 prohibition on operating a motor vehicle with a suspended license likewise is a "traffic law or regulation" for purposes of G. L. c. 90, § 1B. The Commonwealth's argument that it is a traffic law is not without some force. After all, one cannot violate § 23 without operating a vehicle on a public way. However, the contrary interpretation also has force.[5] A traffic law or regulation readily can be understood as one that governs how vehicles are operated. See Black's Law Dictionary 1726 (10th ed. 2014) (defining "traffic regulation" as "[a] prescribed rule of conduct for traffic; a rule intended to promote the orderly and safe flow of traffic"). Section 23 does not regulate the manner in which vehicles are operated; instead, it addresses the threshold question whether the driver can operate a vehicle at all.[6] Indeed, Griswold, 17 Mass. App. Ct.

---

[5] The Commonwealth argues that because the Legislature has twice amended § 1B since 1984 without material change, we should presume that it accepted our interpretation of the statute in Griswold. See Commonwealth v. Rivera, 445 Mass. 119, 128 (2005) ("when a statute after having been construed by the courts is re-enacted without material change, the Legislature are presumed to have adopted the judicial construction put upon it" [quotation omitted]). However, this begs the question of how the holding in Griswold applies to the case before us. For the reasons we explain, we respectfully disagree with the judge that Griswold compels us to accept the Commonwealth's interpretation of the statute.

[6] By comparison, under G. L. c. 90, § 24(1)(a), the statute at issue in Griswold, the Commonwealth must prove that the defendant was operating the vehicle "under the influence" of

at 462, itself appears to draw a distinction between licensing requirements and operational requirements.

Also of significance is the fact that operating a motorized bicycle with a suspended license would constitute an express violation of § 1B (as the operation of such a vehicle "by any person not possessing a valid driver's license or learner's permit"). The Legislature's decision to expressly criminalize such conduct in § 1B, and to establish specific, low-level penalties for that conduct, further suggests that the Legislature did not intend indirectly to make it an additional crime under § 23.[7] Moreover, this means that such conduct is subject to punishment without our needing to interpret "traffic laws and regulations" expansively. Thus, unlike in Griswold,

---

alcohol, that is, that alcohol "diminished the defendant's capacity to drive safely." Commonwealth v. Tynes, 400 Mass. 369, 374-375 (1987). Thus, Griswold involved a statute that directly implicated the operation of the vehicle.

[7] To be clear, we emphasize that we are not saying that the Legislature was precluded from criminalizing such conduct under both sections. As the Commonwealth accurately states, the Legislature generally is free to criminalize particular conduct under multiple statutes, leaving the decision of which charges to bring to the discretion of the Commonwealth. See Commonwealth v. Hudson, 404 Mass. 282, 287-288 (1989) (recognizing that stealing goods from a store could be prosecuted either as shoplifting or as larceny by asportation).

supra, the Commonwealth's interpretation is not compelled by "common sense and sound reason."[8]

In sum, although the Commonwealth's interpretation of the statutory text is plausible, so too is the defendant's alternative reading. Accordingly, we are required to accept the defendant's interpretation under the rule of lenity. See Commonwealth v. Williamson, 462 Mass. 676, 679 (2012), quoting from Commonwealth v. Roucoulet, 413 Mass. 647, 652 (1992) ("when a criminal statute can 'plausibly be found to be ambiguous,' the rule of lenity applies, and we 'give the defendant the benefit of the ambiguity'"). Because, as a matter of law, the defendant's operating a motorized bicycle with a suspended license does not constitute a violation of G. L. c. 90, § 23, his conviction under that statute cannot stand.

In closing, we acknowledge that good policy arguments can be made for allowing the Commonwealth to bring a § 23 charge against someone who operates a motorized bicycle with a

---

[8] For the sake of completeness, we note that we touched on this area of the law in Commonwealth v. Ceria, 13 Mass. App. Ct. 230, 233 n.3 (1982), albeit in dicta. There, after observing that motorized bicycles are excluded from the definition of motor vehicles but are subject to the traffic laws of the Commonwealth, we foreshadowed our subsequent holding in Griswold by stating our view that an operator of a motorized bicycle could be arrested for violations such as operating under the influence or driving to endanger. However, we also concluded that an operator of a motorized bicycle could not be arrested for not having a license in his possession, even though G. L. c. 90, § 21, authorizes such arrests with respect to operators of motor vehicles.

suspended license.  However, whether to modify the statute to allow such prosecutions properly falls to the Legislature.  See Brach v. Chief Justice of the Dist. Ct. Dept., 386 Mass. 528, 538-539 (1982).

Judgment reversed.

Finding set aside.

Judgment for the defendant.