Fabricant, J.
INTRODUCTION
Plaintiffs, tenants in a Cambridge apartment building, seek damages against their landlord for alleged violations of the State Sanitary Code and unfair trade practices under G.L.c. 93A. Count I of the complaint alleges violations of provisions of the State Sanitary Code requiring that dwelling units be maintained in such a way as to be weather tight; plaintiffs allege that their units have experienced “violent and repellent flooding.” In Count II, plaintiffs allege violation of separate provisions of the State Sanitary Code governing charges for utilities. In Count III, plaintiffs allege that the violations of the Sanitary Code alleged in Counts I and II also constitute unfair trade practices in violation of G.L.c. 93A. Presently before the Court is the plaintiffs’ motion for partial summary judgment on Count II of their Complaint, along with their motion for class certification as to that Count. Defendants argue in their opposition that they are entitled to summary judgment. For reasons that will be explained, summary judgment will be entered on Count II in favor of defendants Massachusetts Institute of Technology and Independent Managers, Inc., and in favor of plaintiffs as against defendant Kennedy Lofts Associated Limited Partnership. Plaintiffs’ motion for class certification will be denied without prejudice to renewal at a later stage of the litigation.
FACTS
The affidavits submitted by the parties in connection with the present motions establish the following facts. The named plaintiffs are twelve residential tenants in a 142 unit apartment building known as Kennedy Biscuit Lofts (“the building”), located in Cambridge. Defendant Massachusetts Institute of Technology (“MIT”) owns the land on which the apartment building is located. Kennedy Lofts Associates Limited Partnership (“Kennedy Lofts”) leases the land from MIT under a seventy-five year ground lease, and owns and operates the building. Defendant Independent Managers, Inc. (“IMI”) serves as Kennedy Lofts’ management agent.
According to the affidavit of a representative of Kennedy Lofts, the heating[3] system in the building works as follows. “The heating system is fueled by gas, which is measured by a meter installed by Commonwealth Gas. The gas is combusted in efficient, modular gas-fired boilers, producing hot water which circulates through the building. The hot water produces hot air in fan coil units located in each apartment, and the *566 hot air is circulated to heat the apartment. The frequency of use of the fans’ controls — which is controlled by each tenant according to the level of heat desired by that tenant — is monitored by a computer system, and the data collected is then converted mathematically into an analog of energy consumption based upon the fan coil manufacturer’s specifications . . . Kennedy pays the local utility company ... for the gas consumed . . . [T]he costs incurred by Kennedy for gas are allocated among the various apartments and common areas at the premises based on the data collected and organized by the computer monitoring system .. . [T]enants are required to pay an allocable share of the cost of heat. Tenants are notified prior to the commencement of their tenancies as to how HVAC services will be determined and billed, and such terms are expressly set forth in written agreements.”
This system, according to the affidavit of the Kennedy Lofts representative, and also according to an affidavit of an energy analyst employed by the Massachusetts Housing Finance Agency, “encourages individual control over utility costs and promotes energy conservation generally, and . . . these benefits are not outweighed by the possibility of inaccurate billings to individual tenants." In support of the latter contention, the affiants note that there are “sufficient controls in place to ensure checks of the system’s operations” and that “tenants are afforded appeal rights to voice their concerns about any utility bills they may receive.”
The plaintiffs filed this action on January 10, 1997. Defendants responded with a motion to dismiss, arguing that the plaintiffs had failed to comply with the procedural requirements set forth in G.L.c. 111, §127C, for private enforcement of the State Sanitary Code. Apparently in response to that contention, on February 18, 1997, plaintiffs made a request to the Cambridge In-spectional Services Department (“ISD”) for an inspection of the building’s heating and cooling system. The ISD performed the requested inspection, and on April 9, 1997, issued a notice of violation, citing 105 C.M.R. §410.354, and directing that the violation be corrected within fourteen days. Defendants petitioned the ISD for a hearing to contest the notice of violation. In the alternative , they requested that the ISD grant a variance from the cited provision of the Sanitary Code, pursuant to its authority under 105 C.M.R. §410.840.
The ISD held an administrative hearing on May 2, 1997, and on September 10, 1997, it issued a written decision granting the requested variance, based on a finding, as required by the regulation, that “strict application and enforcement of the provisions of Section 410.354 of the State Sanitary Code to the Kennedy Lofts premises would do manifest injustice." The ISD reasoned that “(t]he system appears to be a reasonable method to monitor use and allocate cost with the potential for energy conservation and cost savings.” The ISD opined that the system offered tenants the benefit of control over their own costs, and was in that respect preferable to “(t]he likely alternative . . . where the utility costs are prorated as part of the rent" based on number of bedrooms or square footage. The ISD made the variance subject to specified conditions, including the submission of a proposed procedure for resolution of tenant complaints regarding cost allocation. The ISD specified that the variance will be effective until August 31, 1998, and from year to year thereafter, until such time as it might issue notice to the contrary.
At argument on the present motion,[4] the tenants conceded that the variance, unless vacated on judicial review, has the effect of legalizing the challenged system for the present and future, from the date the variance was issued and for as long as it remains in effect. They contend, however, that the system was unlawful until that date, and that they are entitled to damages for having been subjected to its operation during that time period.
DISCUSSION
A.Summary Judgment Standard
The Court grants summary judgment where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, 404 Mass. 14, 16-17 (1989). Where both parties have moved for summary judgment and “in essence there is no real dispute as to the salient facts or if only a question of law is involved” summary judgment shall be granted to the party entitled to judgment as a matter of law. Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983).
B.Defendants MIT and IMI
Defendants MIT and IMI argue that they have no liability for any alleged violations of the sanitary code in the building, since they are neither the owner of the building nor the lessor of the dwelling units. Plaintiffs make no argument in response, and nothing in the allegations of the complaint or in the affidavits submitted by the plaintiffs suggests a basis for imposing liability on these two defendants. Accordingly, the Court concludes that these two defendants are entitled to judgment as a matter of law on Count II of the plaintiffs’ complaint.
C.Violation of State Sanitary Code
The regulation in issue in Count II, 111 C.M.R. §410.354, provides in pertinent part that:
(A) The owner shall provide and pay for the electricity and gas used in each dwelling unit unless (1) [s]uch gas or electricity is metered through a meter which serves only the dwelling unit . . . ; and (2) [t]he rental agreement provides for payment by the occupant.
*567 (C) If the owner is not required to pay for the electricity or gas used in a dwelling unit, then the owner shall install and maintain wiring and piping so that any such electricity or gas used in the dwelling units is metered through meters which serve only such dwelling unit.
The Department of Public Health (“DPH"), which issued the State Sanitary Code pursuant to its authority under G.L.c. 111, §127A, has construed this regulation in an opinion letter, dated February 13, 1997, issued in response to an inquiry from the Boston Inspectional Services Department. DPH opined that the word “meter,” as used in the regulation, means “a meter installed, inspected, maintained, and read by a utility company subject to the jurisdiction of the Massachusetts Department of Public Utilities." DPH based that interpretation on the DPU’s regulatory prohibition against “reselling of utilities or submetering," which that agency considers inconsistent with enforcement of regulatory requirements that ensure accuracy and protect consumers from excessive or erroneous charges. Based on this interpretation, DPH concluded that the regulation does not permit “a Landlord to charge Tenants for hot water and/or heat used where the means of measuring gas output to such heat is based on a system which is (a) not provided by any authorized public utility company, and (b) installed, maintained and read solely by the landlord or the landlord’s employees or agents.”
Giving substantial deference to the DPH opinion, see Boston Police Superior Officers Federation v. Boston, 414 Mass. 458, 462 (1993) (“[a]n agency’s construction of its own rules and regulations ‘is one to which considerable deference is due’... So long as the agency’s interpretation of its regulations and statutory mandates is rational, and adhered to consistently, it should be respected”), the Boston Housing Court ruled, on March 14, 1997, that the regulation prohibits any “owner-installed metering system,” no matter how accurate and fair such a system may be, and despite whatever merit it may have in promoting energy conservation. Inspectional Services Department v. Parker, Boston Housing Court Criminal Action No. 96-3782.[5]
Despite these authorities, Kennedy Lofts argues that its system does not violate the regulation, on two grounds. First, pointing to the phrase “gas used in a dwelling unit,” Kennedy Lofts notes that no gas is actually combusted in the dwelling units at the building; gas combustion occurs only in boilers located in common areas, producing hot water that in turn produces hot air. The resulting hot air, rather than the gas, is distributed to the dwelling units by fans. The argument is not persuasive. Gas is clearly used in the dwelling units, in the sense that the tenants depend on it to produce their heat, air conditioning, and hot water. Nothing in the language of the regulation limits its application to settings in which combustion actually occurs in the dwelling unit.
Kennedy Lofts’ second argument is that the landlord, rather than the tenants, pays the utility company for the gas, and that the regulation does not expressly prohibit the landlord from passing on the cost by charging tenants amounts, characterized as “additional rent,” based on usage. This argument reads the regulation so literally as to render it a nullity; under this reading, any landlord could deprive its tenants of all the protections described in the DPH opinion letter, merely by advancing payments to the gas company, and then recouping from tenants based on the landlord’s own metering system.
More generally, Kennedy Lofts argues that its system promotes energy conservation and gives tenants control of their energy costs, and that these benefits outweigh any risk of erroneous charges. The system, Kennedy Lofts argues, is more consistent with the both the tenants’ interests and the public interest than the alternative of charging higher rent with utilities included. As the ISD’s decision recognizes, the argument has considerable force as a policy matter. But this Court has no authority to decline to enforce a valid regulation, according to its terms and as construed by its issuing agency, based on such policy arguments. The proper forum for these arguments is the ISD, in application for a variance, as well as DPH, in connection with proposals for regulatory change.
Based on the plain meaning of the regulation, along with DPH’s interpretation of it, as well as the persuasive opinion of the Boston Housing Court in the Parker case, this Court concludes that Kennedy Lofts’ system of charges for heating, cooling, and hot water in the building is inconsistent with the requirements of the regulation. It is therefore necessary to consider the effect of the variance granted by the ISD. It is clear that the ISD has the power to grant a variance from the regulation, pursuant to 111 C.M.R. §410.840, and that in granting the variance the ISD has properly recited the standard set in the regulation. Thus, the variance serves to exempt the building from application of the regulation during the period of its effectiveness.[6] Prior to its issuance, however, the building was in violation of the regulation. The variance does not purport to immunize Kennedy Lofts from liability for past violation, if such liability would otherwise exist, nor does Kennedy Lofts cite any authority for such retroactive application of a variance. Retroactivity of that sort would tend to undermine respect for the law by encouraging a landlord to refrain from seeking prior approval, in the form of a variance, before investing in a system that would depart from regulatory requirements, and then to base a variance request on the hardship involved in altering a system already in place. This Court therefore concludes that, despite the ISD variance, Kennedy Lofts remains liable for the violation of the State Sanitary Code committed through the operation of its system of utility charges prior to issuance of the variance.
*568 A regulatory violation does not, however, necessarily give rise to a right to damages. To recover damages, plaintiffs must show, first, that some statutory vehicle authorizes recovery of damages for violation of the State Sanitary Code, and second, that they have suffered compensable damages. Two statutes are relevant here: G.L.c. 111, §§127A-C, and G.L.c. 93A. The former statute grants the Superior Court “jurisdiction in equity to enforce the provisions of said code,” but makes no mention of damages. Moreover, as Kennedy Lofts points out, §127C authorizes enforcement upon petition filed by the tenant, as opposed to by the local board of health, only when the petition alleges facts sufficient to show that the alleged violation “may endanger or materially impair the health or well-being of any tenant,” and that “a request for inspection of such premises was made to the appropriate inspecting agency at least twenty-four hours prior to the filing of the petition and that there has been no inspection.” Neither of these prerequisites is met here. Accordingly, c. 111, §127A-C does not provide authority for the plaintiffs’ claim.
Chapter 93A, §9(3), however, does grant a remedy in damages for the regulatory violation that occurred prior to the grant of the variance.[7] Poncz v. Loftin, 34 Mass.App.Ct. 909, 910 (1993). The measure of damages, however, is not, as the plaintiffs’ complaint claims, “the actual amounts each of them has paid in additional rent. ” Rather, the measure of damages is the actual harm caused to the tenants by the violation — that is; the amount, if any, by which the total of rent and additional rent paid exceeded the fair rental value of the premises. Put differently, the tenants are entitled to recover any amounts charged them by Kennedy Lofts, through the combination of rent and additional charges for utilities, that exceeded the fair rental value of the units with heat, air conditioning, and hot water included.[8] Id., at 911. If that calculation demonstrates that the tenants suffered no actual damages, they will be entitled to recover only nominal damages in the amount of $25, plus a reasonable attorneys fee, pursuant to G.L.c. 93A, §9(3). Id., at 910. Accordingly, plaintiffs are entitled to judgment as a matter of law against Kennedy Lofts on Count II. A hearing will be held at which plaintiffs may seek to establish their damages, failing which, nominal damages will be awarded.
D. Class Certification
Plaintiffs have moved, pursuant to Mass.R.Civ.P. 23, for certification of a class with respect to Count II.[9] Plaintiffs propose to define the class as “all persons who have lived at Kennedy Biscuit Lofts since the building was opened to residential tenants in 1990.” Defendants oppose the motion.
The party moving for class certification bears the burden of demonstrating that the following prerequisites have been met:
(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
Mass.R.Civ.P. 23(a); Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 601 (1985). Rule 23(b) further provides that:
An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Mass.R.Civ.P. 23(b). In determining whether to certify a class, the judge is accorded wide discretion. Brophy v. School Committee of Worcester, 6 Mass.App.Ct. 731, 735 (1978).
Under the numerosity requirement, the court must find that the inconvenience or difficulty of joining all members of the purported class makes class litigation desirable. Joinder need not be impossible, just impracticable, unwise or imprudent. See, e.g. Brophy, supra at 735 (defining impracticable): Westcott v. Califano, 460 F.Supp. 737,744 (D.Mass. 1978). Numbers are not dis-positive; rather, the court should examine the particular circumstances attendant upon the purported class. Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985), cert. denied, 476 U.S. 1172 (1986).
Here, the class of potential plaintiffs consists of those who have been tenants in the 142 apartments in the building during the three year limitations period prior to the filing of the complaint.[10] Depending on the level of turnover in the building, as to which no information has been provided, that group might include 142 households, or three or more times that many. Either number would make individual joinder cumbersome and inconvenient, and in that sense impractical. Moreover, no significant logistical obstacle appears to class litigation. Although plaintiffs have proposed no method of notifying potential class members, and have offered no information as to the number and location of those no longer living in the building, it would seem likely that Kennedy Lofts has sufficient records to generate a list, including last known addresses of former tenants, without undue burden. See McNeill v. New York City Housing Auth., 719 F.Supp. 233, 252 (S.D.N.Y. 1989). Thus, the numerosity factor appears to favor class certification.
The three remaining factors — commonality, typicality, and adequacy of representation — all also favor class certification when Count II is considered in isolation. Clearly common questions of fact and law exist as to Count II. It appears that all tenants were charged for utilities in a manner violative of the State Sanitary Code, prior to the issuance of a variance. While it is certainly possible that the facts that will be *569 presented with respect to damages will vary among the tenants, the overall formula for measuring damages will be the same.[11] See Spear v. H.V. Greene Co., 246 Mass. 259, 266 (1923) (the interest of each prospective class member must arise from “a common relationship to a definite wrong”); M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc., 100 F.R.D. 468, 470 (D.Mass. 1984) (Rule 23 “requires that questions of law and fact be shared by members of the prospective class, but not every question raised need be common”).
Similarly, the position of the named plaintiffs as to Count II is typical of that of all members of the potential class, in that the injuries involved, if any, arise from the same course of conduct, and the claims of all members of the potential class are based on the same legal theories. See, e.g., Donaldson v. Pillsbury Co., 554 F.2d 825, 831 (8th Cir.), cert. denied, 434 U.S. 856 (1977) (“When the claim arises out of the same legal or remedial theory, the presence of factual variations is normally not sufficient to preclude class action treatment”); In re Bank of Boston Corp. Sec. Lit., 762 F.Supp. 1525, 1532 (D.Mass. 1991) (“The claims of a named plaintiff are considered to be typical of the class when the plaintiffs injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when plaintiffs claims and those of the class are based on the same legal theory”); Adair v. Sorenson, 134 F.R.D. 13, 17 (D.Mass. 1991). Nothing in the present record suggests that the efforts of the named plaintiffs in advancing their claims under Count II would be in any way inconsistent with the interests of the class. See McNeill v. New York City Housing Auth., 719 F.Supp. at 252.
It appears also that the named plaintiffs have the ability and the incentive to vigorously represent the claims of the class and have obtained adequate counsel. See Hassine v. Jeffes, 846 F.2d 169, 179 (3d Cir. 1988); Andrews v. Bechtel Power Corp., 780 F.2d at 130; Massengill v. Bd. of Educ., Antioch Comm. High School, 88 F.R.D. 181, 185 (N.D. Ill. 1980) (the “adequacy of representation is the key to the integrity of class litigation").
It is less clear, however, that common questions predominate over individual questions, or that a class action is a superior method for the fair and efficient adjudication of the controversy. In this respect, the relationship between the two substantive counts alleged in the complaint gives pause. The flooding alleged in Count I is clearly specific to the named plaintiffs,[12] and involves individualized claims of harm. Unless actual damages in some significant amount can be shown arising from the utility charge system, it appears at least possible that the potential monetary recovery for the named plaintiffs under Count I will substantially exceed that available to the entire class under Count II.[13] In that event, the common issues could hardly be said to predominate in the case overall, and there would seem to be at least a risk that the individual claims would tend to dominate the attention of the named plaintiffs and of counsel, to the detriment of other class members.[14] Moreover, if plaintiffs cannot prove more than nominal damages under Count II, it is doubtful that the benefit of the litigation to class members would be sufficient to justify the additional complexity occasioned by class action procedures. Accordingly, the Court is not satisfied, based on the present record, that a class action is warranted. The motion for class certification will be denied at this time, without prejudice to renewal at such time as the record is more fully developed with respect to the issues identified, such as after determination of the damages to be awarded under Count II.
ORDER
For the foregoing reasons, the plaintiffs’ motion for summary judgment on Count II is hereby ALLOWED as against defendant Kennedy Lofts Associated Limited Partnership, and DENIED as against defendants Massachusetts Institute of Technology and Independent Managers, Inc., and the request of defendants Massachusetts Institute of Technology and Independent Managers, Inc. for summary judgment on Count II is ALLOWED. Plaintiffs’ motion for class certification is DENIED without prejudice.

 The affidavits submitted by both parties suggest, without ever explicitly saying so, that air conditioning is provided under the same system. Hot water, it appears, is provided by the same source, with charges made to tenants based on the number of occupants of the dwelling unit.

 The ISD issued its decision on the variance request after the present motions had been filed, and shortly before they were argued.

 Soon after the Parker decision, the Kennedy Lofts representative who serves as the defendants’ affiant in this case wrote to the Department of Public Health urging review of its interpretation of the regulation in light of the energy conservation potential of modern monitoring technology. The Department’s Deputy General Counsel responded, by letter dated May 19, 1997, indicating that “we are carefully reviewing this issue and will consider your detailed comments.” Based on this exchange, the defendants assert that "issues pertaining to the meaning and purpose” of the regulation “are currently pending before, and being reviewed by” DPH. The exchange does not support that characterization; nothing in DPH’s response indicates any retreat from the opinion expressed in its previous letter, nor is there is any indication that any rulemaking proceeding is underway to amend the regulation.

 No claim is presently before this court for judicial review of the decision to grant the variance, and nothing in this memorandum should be understood as expressing any view as to the merits of any such claim.

 With the variance in effect, liability is precluded by G.L.c. 93A, §3, which provides that “[nlothing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth!.]”

 Since actions under c. 93A are subject to a three year statute of limitations, the relevant time period for this calculation will be the three year period ending upon the filing of this action.

 Plaintiffs’ written motion appears addressed to the entire action. At argument, however, plaintiffs acknowledge the individual nature of the flooding alleged in Count I, and limited their request for class certification to Count II.

 See note 8, supra.

 Defendants assert in their memorandum that “there are distinctions between market rate tenants and assisted tenants . . . with respect to the payment of heating and cooling costs,” but they neither identify the claimed distinctions nor document them.

 Defendants assert that the named plaintiffs occupy basement units, and suggest that the flooding problem is unique to that setting.

 This analysis assumes liability on Count I, which has yet to be detemined.

 The parties have provided no citations to any cases addressing the propriety of certification of a class action with respect to a single count of a multiple count complaint.